**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**SARAH HOFFMAN O/B/O D.R..**

**Plaintiff,** **25-CV-00428-HKS**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

## DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #14.

## BACKGROUND[1]

On July 12, 2017, Sarah Hoffman ("Hoffman"), on behalf of her son, D.R., a child under the age of 18, protectively filed a Title XVI application for supplemental security income ("SSI"), with an alleged disability onset date of the same. Dkt. #3, pp. 236-241.[2] D.R.'s date of birth is November 27, 2013. Dkt. #3, p. 236.

In a Disability Report filed on August 7, 2017, Hoffman stated that D.R. was disabled due to speech delay, developmental delay, sensory issues, lead poisoning, and

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

[2] A prior SSI claim filed on D.R.'s behalf was unsuccessful and closed in 2016. Dkt. #3, p. 139.

occupational disorder. Dkt. #3, p. 243. In a Function Report filed the same day, Hoffman reported that her son did not ask a lot of what, why, or where questions; use complete sentences of more than four words most of the time; talk about what he is doing; or talk about things and activities that happened in the past. Dkt. #3, p. 256. She also reported that D.R. could not recite numbers to three, count three objects, or identify most colors. Dkt. #3, p. 257. As to physical abilities, Hoffman stated that D.R. could not catch a large ball, ride a big wheel or tricycle, or use a wind-up toy. *Id.* She reported that D.R. did not enjoy being with other children of the same age; could not perform personal hygiene tasks without help; and that his attention span was less than two minutes and he could not focus. Dkt. #3, pp. 259-260.

Plaintiff's claim was denied initially on December 28, 2017. Dkt. #3, pp. 151-156. Plaintiff requested a hearing, and a video hearing was held before Administrative Law Judge ("ALJ") Susan Smith on December 9, 2019. Dkt. #3, pp. 33-47. Hoffman and D.R. appeared in person and were represented by counsel. *Id.*

The ALJ issued an unfavorable decision on January 23, 2020, Dkt. #3, pp. 19-27, and plaintiff requested review by the Appeals Council. On October 1, 2020, the Appeals Council denied plaintiff's request. Dkt. #3, pp. 7-13.

Plaintiff appealed to this Court, and on March 10, 2023, the Court granted in part and denied in part the parties' motions for judgment on the pleadings and remanded the case to the Commissioner. *Hoffman v. Comm'r of Soc. Sec.*, Case No. 1:20-cv-01736-FPG, Dkt. #14. Specifically, the Court determined that the Appeals Council

had erred in rejecting additional evidence—a questionnaire from one of D.R.'s teachers—when the Council denied plaintiff's request for review. *Id.*

On remand, a telephonic hearing was held before ALJ Bryce Baird on July 31, 2024. Dkt. #3, pp. 567. Hoffman and D.R. appeared with their counsel.

Upon examination by the ALJ, Hoffman testified, regarding D.R.'s poor attendance at school, that it was often difficult for her to get D.R. to go to school or he would be very tired. Dkt. #3, p. 576-577.

Upon examination by her attorney, Hoffman testified that sometimes D.R. does not sleep at all and he "completely crashes out," that this has been ongoing since his lead poisoning, and that it happens three to four times a week. Dkt. #3, p. 577. D.R. is lethargic during the day, and it is hard to get him up in the morning. Dkt. #3, p. 578.

Hoffman also testified that D.R. has chores around the house, such as rinsing his dishes or taking out the trash, but she has to do them with him. *Id.* She also puts his shoes on and ties them; helps him brush his teeth and get dressed; buttons his clothes; makes his bed; and picks up his room. *Id.* Hoffman stated that D.R. requires frequent reminders to perform tasks. *Id.*

Next, Hoffman testified that D.R. struggles with homework, although he tries, and it's particularly difficult if he has had a bad day. Dkt. #3, p. 579. She stated that

he goes from being up one minute and down the next, and if he is not happy, he is very angry and sad. Dkt. #3, pp. 579-580.

Hoffman also testified that occupational therapy has helped with D.R.'s fine motor skills, but she still has to help him with tasks that she thinks a ten-year-old should be able to do on his own. Dkt. #3, p. 580. She also testified that he falls down and drops things a lot. *Id.*

On questioning by the ALJ, Hoffman testified that D.R. completed the fifth grade in June 2024, and that he has not been held back. Dkt. #3, p. 581. She testified that he was in special education classes in the areas of math and reading. Dkt. #3, p. 582. Finally, Hoffman testified that she did not believe that D.R. was going to be able to function normally in society as an adult. Dkt. #3, p. 583.

The ALJ issued an unfavorable decision on January 28, 2025, Dkt. #3, pp. 550-566, and this appeal followed.

## DISCUSSION AND ANALYSIS

### Legal Standards

#### A. Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012). Substantial evidence is defined as “such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner’s determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). “Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner.” *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

### B. Disability Determination

An individual under the age of eighteen qualifies for disability benefits under the Social Security Act “‘if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.’” *Tanya Lea B., o/b/o J.T.B v. Comm’r*, No. 1:24-CV-1469 (DNH/PJE), 2026 WL 738866, at *2 (N.D.N.Y. Feb. 27, 2026) (quoting 42 U.S.C. § 1382(a)(3)(c)(i)).

“An ALJ follows a three-step sequential evaluation to determine whether a child is entitled to SSI benefits.” *Id.* First, the child “must not be engaged in ‘substantial gainful activity.’” *Id.* Second, the child must have a medically determinable impairment that is severe in that it causes more than minimal functional limitations.” *Id.* (cleaned up). Third, the child’s “impairment or combination of impairments must medically or functionally equal an impairment listed in an appendix to the regulations.” *Id.*

In analyzing whether the child's impairment satisfies the third prong, an ALJ "must assess the child's functioning in six main areas referred to as domains." *Id.* (citations and internal quotation marks omitted). "The regulations define the domains as broad areas of functioning intended to capture all of what a child can or cannot do." *Id.*

The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.*

If a child has "marked" limitations in two domains or an "extreme" limitation in one domain, "then the child's impairment is functionally equivalent to a disability in the Listings." *Id.* at *3 (citation and internal quotation marks omitted). A "marked" limitation is found where the child's

> impairment interferes seriously with his ability to independently initiate, sustain, or complete activities. The child's day-to-day functioning may be seriously limited when the impairment limits only one activity or when the interactive and cumulative effects of the impairment limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."

*Id.* (cleaned up).

Further, a "marked limitation is equivalent to the functioning that would be found on standardized testing with scores that are at least two, but less than three, standard deviations below the norm." *Id.*

However, in "'determining the extent of a child claimant's limitations, the ALJ is not to rely on any test score alone. No single piece of information taken in isolation can establish whether you have a "marked" or "extreme" limitation in a domain.'" *Id.* (quoting 20 C.F.R. § 416.926a(e)(4)(i)). "The ALJ is to consider a claimant's test scores together with the other information they have about the claimant's functioning, including reports of classroom performance and the observations of school personnel and others." *Id.* (cleaned up). *See also Juarez v. Saul*, 800 F. App'x 63, 65 (2d Cir. 2020) (summary order) ("[T]he Social Security regulations rely not just on test scores, but also require the Commissioner to take into account whether a claimant's day-to day functioning in domain-related activities is consistent with those scores.") (citation and internal quotation marks omitted) (cleaned up).

Here, the ALJ made the following findings regarding the three-step sequential evaluation: (1) D.R. was born on November 27, 2013, and was therefore a preschooler on the date the SSI application was filed and was currently a school-age child; (2) D.R. had not engaged in substantial gainful activity since July 12, 2017, the application date; (3) D.R. has the severe impairments of mild receptive language delay, moderate expressive language delay, fine motor skill development delay, and a history of lead poisoning. Dkt. #3, p. 554. The ALJ also determined that D.R. exhibited: (1) less than a marked limitation in acquiring and using information; (2) a marked limitation in attending and completing tasks; (3) less than a marked limitation in interacting and relating with others; (4) no limitation in moving about and manipulating objects; (5) less than a marked

limitation in the ability to care for himself; and (6) less than a marked limitation in health and physical well-being. Dkt. #3, p. 555.

Thus, because he found that D.R. did not have either "marked" limitations in two domains of functioning or an "extreme" limitation in one area of functioning, the ALJ found that D.R. was not disabled. Dkt. #3, p. 559.

**C. Analysis**

Plaintiff makes three challenges to the ALJ's decision: (1) he failed to explain the rationale supporting the level of impairment found in each of the six functional domains; (2) his finding of less than marked limitations in moving about and manipulating objects was unsupported by substantial evidence; and (3) he failed to adequately evaluate the teacher questionnaire of Ashley Bowersox. Dkt. #9-1, pp. 13-14.

**The Six Functional Domains**

Plaintiff first argues that the ALJ erred by determining D.R.'s level of functioning in each of the six domains by merely listing them in bullet points, without "discussion" or "analysis." Dkt. #9-1, pp. 14-18. This argument is without merit.

"When reviewing a child's impairments for functional equivalence, an ALJ must consider all of the relevant evidence and employ a 'whole child' approach which considers the child's everyday activities and requires the ALJ to determine all domains involved in performing such activities, as well as whether the child's medically

determinable impairments account for limitations in activities, and to what degree such impairments limit the child's ability to function age-appropriately in each domain." *Maramagelis R., o/b/o D.D.F. v. Comm'r of Soc. Sec.*, 22-CV-246Sr, 2024 WL 4026200, at *3 (W.D.N.Y. Sept. 3, 2024) (citation and internal quotation marks omitted).

"There is no particular structure required to demonstrate compliance with this approach." *Id.* "Stating conclusions in a bullet-point format, for example, does not establish grounds for remand so long as the ALJ explains the conclusions by addressing the record in sufficient detail." *Id. See also Tanya B.*, 21-CV-06090-LJV, 2023 WL 4999833, at *2 (W.D.N.Y. Aug. 4, 2023) (rejecting plaintiff's argument that ALJ's use of bullet points to state his conclusions as to degree of claimant's limitations required remand because "he explained those conclusions by addressing the record in some detail").

In *Elizabeth R., o/b/o J.D.R. v. Comm'r of Soc. Sec.*, 21-CV-6037 (JLS), 2023 WL 2325885 (W.D.N.Y. Mar. 2, 2023), for example, this Court rejected plaintiff's argument that the "ALJ failed to even discuss the domains individually, give a definition of each domain and the age-appropriate expectations," or "give a summary of J.D.R.'s functioning within each domain." *Id.* at *3. The Court noted that "an ALJ's analysis does not need to be structured in such a rigid way—rather, she must employ the 'whole child' approach." *Id.* (citations omitted).

Therefore, regardless of format, "the question is simply whether the ALJ's assessment of [claimant's] six functional domains is supported by substantial evidence." *Tanya D.*, 2023 WL 4999833, at *2. Upon close review, the Court concludes that the ALJ's determinations regarding D.R.'s limitations satisfy that standard.

Overall, the ALJ considered D.R.'s medical records concerning his history of lead poisoning; his developmental delays; various formal testing results from the time D.R. was almost three years old; results of consultative and occupational therapy examinations; teacher questionnaires; D.R.'s individualized education programs ("IEPs"); and several medical opinions. Dkt. #3, pp. 556-559.

The ALJ first explained his determination that D.R. had a "marked" limitation in attending and completing tasks, which considers "a child's ability to focus and maintain attention, and to begin, carry through, and finish activities or tasks." *Candice M., o/b/o L.B. v. Comm'r of Soc. Sec.*, 1:20-CV-1076 (WBC), 2022 WL 624064, at *4 (W.D.N.Y. Mar. 3, 2022) (citations omitted).

It is clear to the Court that the ALJ relied on questionnaires completed by two of D.R.'s special education teachers in reaching this conclusion. Dkt. #3, pp. 557-558. Both teachers indicated that D.R. had significant problems in the area of attending and completing tasks.[3]

[3] This SSA form questionnaire asks the teacher to rate key activities comparing the child with the "functioning of same-aged children without impairments," and provides five options: (1) no problem; (2) a slight problem; (3) an obvious problem; (4) a serious problem; and (5) a very serious problem. Dkt. #3, pp. 51, 989.

Teacher Ashley Bowersox ("Bowersox"), in a questionnaire dated November 18, 2019, rated D.R. in thirteen areas encompassed by "Attending and Completing Tasks," opining that he had hourly problems in all thirteen areas, with ten being either "serious" or "very serious." Dkt. #3, p. 51. In the narrative portion of this form, Bowersox stated that D.R. "struggles to remain focused during class time;" "is frequently off task and disruptive to others;" and "struggles to complete classwork, especially independently." *Id.*

Similarly, in October 2024, when D.R. was ten years old, teacher Rebecca Howell ("Howell") completed the same questionnaire, opining that D.R. had weekly or daily problems in this area: one being "very serious," one being "serious," and the others varying from "no problem" to "an obvious problem." Dkt. #3, 989. In the narrative portion, Howell stated that D.R. "needs more monitoring to refocus/redirect him or to check for understanding;" he "needs steps repeated multiple times for him to be successful on the task;" and he "has a very difficult time staying focused." *Id.*

Against this backdrop, plaintiff asserts that the ALJ erred in determining that D.R. has a "less than marked" limitation in the separate area of "acquiring and using information." Dkt. #9-1, p. 4; Dkt. #13, pp. 6-8.[4]

[4] Plaintiff did not delineate this as a separate argument in her opening brief.

Under the domain of "acquiring and using information," an ALJ "will consider a child's ability to learn information and to think about and use the information." *Candice M.*, 2022 WL 624064, at *5 (citations omitted). For pre-school children, such functioning includes developing skills needed for learning to read, doing math, and writing. *Id.* For school-age children, examples of typical functioning include learning to read, write, or do simple arithmetic; becoming interested in new subjects; producing oral and written projects; and taking tests, doing group work, and entering into class discussions. *Id.*

Plaintiff argues that Bowersox's responses in the 2019 questionnaire—in which she opined that D.R. had "serious" or "very serious" problems in four of the ten areas under "Acquiring and Using Information," and "obvious" problems in five areas—indicate that D.R. had a "marked" limitation in acquiring and using information. Dkt. #9-1, p. 4; Dkt. #13, p. 6.

However, this Court has held that the argument that a teacher's assessment of "serious" or "very serious" problems in a teacher questionnaire necessarily equates to "marked" limitations as defined in SSA regulations "is misplaced and without legal authority." *Candice M.*, 2022 WL 624064, at *3. Thus, a "teacher opinion that a claimant has some limitations within a domain is not necessarily inconsistent with an ALJ's conclusion that those limitations were 'less than marked.'" *Id.* (citations omitted) (collecting cases). *See also Lisa T., o/b/o T.M. v. Kijakazi*, 21-CV-6052L, 2023 WL 24048, at *2 (W.D.N.Y. Jan. 3, 2023) (noting that "courts have consistently rejected the argument that a teacher's opinion that a child has 'serious' or 'very serious' limitations in one or

more areas of a functional domain is the equivalent of a 'marked' limitation in the domain, particularly where, as here, medical opinion evidence indicated no more than moderate limitations.") (citations omitted).

Contrary to plaintiff's argument, the ALJ's determination that D.R. has less than a marked limitation in this area is supported by substantial evidence from various sources.

First, the ALJ discussed testing done in 2016, when D.R. was in preschool, which showed below average development in areas such as cognitive, social, and fine motor skills, while other testing done close in time showed that he in was in the adequate range for such skills and that his IQ was within normal limits. Dkt. #3, p. 556.

The ALJ also noted a speech-language evaluation conducted in September 2017 when D.R. was almost four years old. Speech-language specialist Sarah Graham ("Graham") evaluated D.R. and conducted several formal, standardized tests. Dkt. #3, pp. 391-395. Graham concluded that D.R. exhibited "age appropriate expressive and receptive language skills as compared to his peers;" that his current level of function was within normal limits; that his prognosis was "good without skilled intervention;" and that "no skilled intervention is warranted at this time." Dkt. #3, pp. 394-395.

Next, the ALJ observed that an educational evaluation of D.R. in November 2017 concluded that his overall cognitive/pre-academic skills were within normal limits. Dkt. #3, p. 431.

The ALJ then turned to the Bowersox and Howell teacher evaluations. The ALJ acknowledged Bowersox's assessment of "very serious" problems under the category of acquiring and using information and stated: "In her narrative statement concerning the area of acquiring and using information, however, Ms. Bowersox noted that the claimant requires extra focus and attention prompts as well as one-to-one assistance in order to complete assignments and stay on task." Dkt. #3, p. 557. The ALJ stated: "These concerns mirrored in the evaluation for attending and completing tasks." *Id.*

Turning to Howell's questionnaire, the ALJ noted that Howell assessed only "no problems" or "slight problems" in all ten areas of "Acquiring and Using Information," and that she stated that D.R. is very capable of performing six grade work, although he can become distracted and needs redirecting. Dkt. #3, pp. 557-558.

Next, the ALJ considered a consultative "Speech and Language Evaluation Report" prepared by Sara Marciniak ("Marciniak"), a speech-language pathologist, on April 23, 2024. Dkt. #3, p. 558. Marciniak evaluated D.R., who was then 10 years old, and conducted a formal clinical evaluative test. Dkt. #3, pp. 959-962.

In her Medical Source Statement, Marciniak opined:

> [D.R.] is a 10-year 4-month-old boy who is currently enrolled in an integrated co-teaching classroom where he receives speech, OT and PT. *At the time of this evaluation, he did not have difficulty communicating in an effective manner. He was able to understand and follow directions, make his wants and needs known, and answer questions.* The results obtained during speech and language testing indicate that [D.R.] has a mild delay in receptive language and a moderate delay in expressive language. *His language delay is not considered significant, as it is unlikely to impact his educational success.*
>
> *Therefore, the results obtained at this time do not appear to be significant, and as such, are not consistent with the claimant's allegations.*

Dkt. #3, p. 961 (emphasis added).

The ALJ next reviewed D.R.'s current IEP, noting that it stated that D.R. had improved significantly; he was currently performing above Benchmark in reading, which he reported was his favorite subject and which he found easy; and that he should be discharged from occupational therapy given his improvements. Dkt. #3, pp. 901-905.

The ALJ then turned to the medical opinions of record. He found the opinion of state agency examiner Dr. B. Souter "not fully persuasive" only as to his opinion that D.R. had "less than marked" limitations in attending and completing tasks. Dkt. #3, p. 558. Notably, Dr. Souter opined that D.R. had "no limitations" in acquiring and using information. Dkt. #3, p. 145.

The ALJ found Graham's opinion, discussed above, persuasive in recommending no need for skilled intervention with D.R.'s speech and language skills.

Dkt. #3, p. 558. He noted that Graham's opinion was supported by later testing showing only normal or mild limitations. *Id.* Similarly, the ALJ found Marciniak's opinion persuasive as she is a specialist in language pathology, and her opinion was based on her observations and conversations with D.R., as well as objective testing. Dkt. #3, pp. 558-559.

Finally, the ALJ stated that Bowersox's and Howell's opinions were "persuasive and consistent with a marked limitation in attending and completing tasks, *as well as less than marked limitations in other areas*." Dkt. #3, p. 559 (emphasis added).

Thus, plaintiff's argument that the ALJ's assessment of D.R.'s limitation in acquiring and using information lacked meaningful analysis is not well taken. *See, e.g., Ryan, o/b/o V.D.C. v. Comm'r of Soc. Sec.*, 21-2947-cv, 2022 WL 1793327, at *2 (2d Cir. Dec. 27, 2022) ("Substantial evidence supports the ALJ's finding that V.D.C. had less than marked limitation in acquiring and using information. The ALJ carefully assessed the complete record, which includes school records, hearing testimony, treatment notes, and medical opinion evidence.").[5]

[5] Cases cited by plaintiff are therefore distinguishable. *See, e.g., Shaune H., o/b/o T.A.P. v. Comm'r of Soc. Sec.*, Case # 1:21-cv-222-DB, 2023 WL 1987992, at *3 (W.D.N.Y. Feb. 14, 2023) (remanding where ALJ "did not give any explanation for his findings" in four domains); *Lopez, o/b/o Y.T. v. Comm'r of Soc. Sec.*, 18-CV-6704, 2020 WL 4504987, at *2 (W.D.N.Y. Aug. 5, 2020) (remanding where ALJ provided "no meaningful analysis at all"); *Bradley, o/b/o Y.T.B. v. Berryhill*, 305 F. Supp.3d 460, (W.D.N.Y. 2018) (remanding where ALJ made "cursory finding" that claimant had less than marked limitation in acquiring and using information; finding was "cursory" and "largely unexplained"). Further, the Court notes that, other than the area of moving about and manipulating objects, which is discussed below, plaintiff does not specifically address the other domains.

Finally, plaintiff argues that the ALJ erred in not explaining why his determinations in two domains differed from the January 2020 decision by ALJ Susan Smith. Dkt. #9-1, p. 16. This is a red herring.

First, it is well established that "two ALJs may permissibly reach opposite conclusions on the same record and, certainly, on different records dealing with different time periods." *Borelli v. Bisignano*, No. 24-3077, 2025 WL 2785600, at *3 (2d Cir. Oct. 1, 2025) (summary order) (citation omitted).

Moreover, the ALJ here diverged in D.R.'s favor in the domain of attending and completing tasks by finding him to have a "marked" limitation in that area, whereas the prior ALJ found him to have a "less than marked" limitation in that domain. Dkt. #3, p. 24. And the difference in the domain of moving about and manipulating objects is slight and immaterial: the prior ALJ found D.R. to have a "less than marked" limitation, while the ALJ here found "no limitation." Dkt. #3, pp. 24, 555. Neither finding rises to the level of the "marked" limitation necessary to support a finding of disability.

In sum, plaintiff's "arguments boil down to a disagreement with the ALJ's weighing of the evidence, but it is not the function of this Court to re-weigh evidence or consider *de novo* whether [the claimant] is disabled." *Tanya D.*, 2023 WL 4999833, at *5 (citations and internal quotation marks omitted).

**D.R.'s Limitations in Moving About and Manipulating Objects**

Plaintiff next argues that the ALJ erred in finding that D.R. had "no limitation" in the domain of moving about and manipulating objects. Dkt. #9-1, pp. 18-23.

Plaintiff bases this argument on testing performed in 2018 that showed that D.R. scored poorly—more than two standard deviations below the mean—during an occupational therapy consultation on a test measuring his fine motor skills, specifically his ability to grasp. Dkt. #9-1, pp. 20-22; Dkt. #3, pp. 520-521. That test showed that D.R. was "severely delayed" in grasping. Plaintiff also notes that elsewhere in the record is evidence of D.R.'s difficulty with motor skills. Dkt. #9-1, p. 23.

The ALJ noted that D.R. underwent such testing in 2017 which revealed noticeable delays in his fine motor skills "at just under two standard deviations from the normal range." Dkt. #3, p. 557.

Viewed in isolation, D.R.'s test scores in this area might warrant a "marked" finding. However, it is beyond dispute that an ALJ may not rely on any test score alone, but instead the applicable regulations require that he "consider a claimant's 'test scores together with the other information they have about the claimant's functioning, including reports of classroom performance and the observations of school personnel and others.'" *Tanya Lea*, 2026 WL 738866, at *3 (quoting 20 C.F.R. § 416.926a(c)(4)(ii)).

Here, substantial evidence supports the ALJ's conclusion that, despite the poor fine motor skill test results when D.R. was three or four years old, a finding of a "marked" limitation in this domain was not warranted.

In her 2019 Teacher Questionnaire regarding D.R., Bowersox stated under the "Moving About and Manipulating Objects" domain that "no problems" were observed and that D.R.'s functioning appeared age-appropriate. Dkt. #3, p. 53. Howell provided the same opinion of "no problems" in this domain in her 2024 Teacher Questionnaire. Dkt. #3, p. 991.

State agency reviewer Dr. Souter reviewed the test results in question, along with the other records, and opined that D.R. had "less than marked" limitations in this area. Dkt. #3, p. 146.

Finally, the ALJ referenced DR.'s IEP from 2024, which stated that his teachers reported that he had no difficulty positioning himself in the classroom or the school environment, and that he had improved "greatly" during occupational therapy and it was recommended that he be discharged from such therapy. Dkt. #3, pp. 558, 905.

This is thus not a case, as plaintiff argues, where "it is impossible to discern the reasoning behind the ALJ's overall assessment in this domain." *Jimenez, o/b/o D.S.J.*, 21 Civ. 2030 (KMK) (AEK), 2022 WL 4085953, at *10 (S.D.N.Y. Aug. 18, 2022).

Therefore, while the ALJ's reasoning as to this domain is not set forth separately but rather is woven into his overall analysis, for the reasons stated above, it satisfies the substantial evidence standard. *See Juarez*, 800 F. App'x at 64-65 (while ALJ's opinion was "thin" in reasoning, remand was not warranted where ALJ considered claimant's poor test scores in the context of other evidence, including her daily activities and psychoeducational and psychiatric evaluations).

**<u>The Teacher Questionnaire of Ashley Bowersox</u>**

Plaintiff's third argument is that the ALJ erred by finding Bowersox's questionnaire persuasive but only adopting portions of it regarding attending and completing tasks and by improperly attributing limitations in acquiring and using information to attention issues. Dkt. #9-1, p. 23. Plaintiff also argues that the ALJ erred by failing to consider how D.R.'s speech and language difficulties supported a "marked" limitation in acquiring and using information. Dkt. #9-1, pp. 23-24.

These arguments are substantively addressed in the first section of the Court's analysis discussed above. That is, the ALJ considered Bowersox's opinion as to D.R.'s limitation in the domain of acquiring and using information in the context of other evidence in the record which reflected that he was less limited in that area than Bowersox opined. As noted above, the ALJ's ultimate determination of "less than marked" in that domain is supported by substantial evidence. *See Lisa T.*, 2023 WL 24048, at *3 ("Because Ms. Genagon's assessment was at odds with the bulk of the record, and because teacher questionnaire indications of 'serious' or 'very serious' problems do not

by themselves compel a finding of marked limitations in any event, the ALJ did not err in declining to find the assessment persuasive.").

The Court also does not find persuasive plaintiff's "attribution" argument. Nowhere in his decision does the ALJ suggest that he disregarded Bowersox's opinions as to D.R.'s problems in acquiring and using information because they were encompassed in his findings regarding attending and completing tasks. Instead, he merely observed, accurately, that Bowersox's narrative statement on the page for acquiring and using information "mirrored" the opinions she expressed in the domain of attending and completing tasks.

*Christina M., o/b/o A.T.M v. Comm'r of Soc. Sec.*, 6:20-CV-6686Sr, 2022 WL 4545255 (W.D.N.Y. Sept. 22, 2022), on which plaintiff relies, is thus inapposite. There, the Court held that "the ALJ erred in attributing limitations observed by plaintiff's teachers under the domain of acquiring and using information to the domain of attending and completing tasks, *without sufficient consideration for whether that marked limitation sufficiently affected the child's ability to acquire and use information as well*." *Id.* at *4.

This case is different in both respects. First, plaintiff has not shown how the ALJ conflated these two domains, and his simple observation regarding Bowersox's narrative remark does not support the conclusion that he did so. Second, as discussed at length above, the ALJ sufficiently considered what limitation in the domain of acquiring and using information was supported by the record before him.

In sum, the Court concludes that the ALJ's decision was supported by substantial evidence and that the Commissioner's determination must be upheld.

**CONCLUSION**

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #9) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #12) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED: Buffalo, New York
October 23, 2026

**s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**